# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

———
CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1296

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
C. ALLEN PARKER
SUSAN WEBSTER
DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR

SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN

GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO

KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA
STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
JOHNNY G. SKUMPIJA
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
KENNETH C. HALCOM
DAVID M. STUART

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
PAUL C. SAUNDERS

October 3, 2014

In re Tower Group International, Ltd. Securities Litigation (1:13-cv-5852-AT)

Dear Judge Torres:

We represent PricewaterhouseCoopers LLP ("PwC"), a newly added defendant in the above-captioned action. On September 19, 2014, in accordance with Section III(B)(i) of the Court's Individual Practices in Civil Cases, we sent Plaintiffs a letter setting forth deficiencies in the Consolidated Class Action Complaint (the "Complaint") warranting dismissal of Count II, the only claim asserted against PwC. Plaintiffs replied by letter on September 26, 2014, declining to amend their Complaint. PwC therefore respectfully requests a pre-motion conference on a motion to dismiss Count II of the Complaint.

Plaintiffs assert a securities fraud claim against PwC based on PwC's "audit opinions on Tower's financial statements and internal controls for the years 2010, 2011 and 2012". (Compl. ¶¶ 46, 347-355.) "[T]o state a cause of action under section 10(b) and Rule 10b-5, a plaintiff must plead that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused plaintiff injury." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 266 (2d Cir. 1996) (quotation omitted). Plaintiffs must plead fraud with particularity under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b).

Plaintiffs' claim against PwC should be dismissed for two reasons. First, Plaintiffs fail to plead scienter with the requisite particularity. Plaintiffs do not come close to meeting the "no audit at all" standard for pleading scienter against an independent auditor, such as PwC. Indeed, the Complaint contains numerous allegations that are inconsistent with scienter on PwC's part—for example, that PwC insisted that Tower bring in an independent actuarial firm, which caused Tower to increase its loss reserves. Thus, Plaintiffs' own allegations render implausible any inference that PwC had an actual intent to aid in a fraud by Tower. Second, Plaintiffs do not plead an actionable misstatement. PwC's statements at issue were statements of opinion, and cannot form the basis for a fraud claim unless PwC did not honestly believe the opinions at the time they were expressed. Plaintiffs do not make the necessary allegation.

**Scienter.** A plaintiff asserting securities fraud must "state with particularity facts giving rise to a strong inference" that the defendant acted with scienter. 15 U.S.C. § 78u-4(b)(2). The inference of scienter must be "at least as compelling as any opposing inference of nonfraudulent intent". *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

In this case, Plaintiffs plead facts <u>inconsistent</u> with any inference that PwC participated in Tower's alleged fraud, and therefore cannot satisfy the *Tellabs* standard. Those allegations include assertions (i) that PwC sometimes "disagreed" with Tower over what Tower's loss reserves should be (Compl. ¶ 281); (ii) that PwC "insist[ed]" that Tower increase its loss reserves beginning in the second half of 2012 (*id.* ¶ 165); (iii) that PwC's insistence caused Tower in 2013 to bring in an outside actuarial firm to examine the company's loss reserves (*id.* ¶ 281); (iv) that the actuarial firm's work led to a restatement of the company's loss and loss adjustment expenses (*id.* ¶ 122); and (v) that the disagreement between PwC and Tower "ultimately led to Tower terminating its relationship with PWC" (*id.* ¶ 281). Moreover, the Complaint acknowledges that PwC "raise[d] substantial doubt about [Tower's] ability to continue as a going concern". (*Id.* ¶ 266.) These allegations are inconsistent with an inference of scienter on the part of PwC and instead give rise to an inference that PwC acted in good faith and not, as Plaintiffs assert, with the intent to deceive.

A plaintiff may allege scienter "by either (1) showing the [defendant's] motive and opportunity to perpetrate fraud, or (2) alleging 'strong circumstantial evidence of conscious misbehavior or recklessness'". *Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 331 (S.D.N.Y. 2013) (emphases omitted) (quoting *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 384 (S.D.N.Y. 2007)), *aff'd*, 558 F. App'x 138 (2d Cir. 2014). The Complaint lacks allegations sufficient to establish either basis for scienter.

Plaintiffs seek to imply motive from the fact that PwC received professional fees for performing auditing services for Tower. (Compl. ¶ 283.) This motive could be attributed to all auditors, as well as all other professionals, and has been roundly rejected as a basis for scienter. "[A] generalized motive, one which could be imputed to any . . . for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter." *Chill*, 101 F.3d at 268; *see also In re China Organic Sec. Litig.*, No. 11 Civ. 8623 (JMF), 2013 WL 5434637, at *9 (S.D.N.Y. Sept. 30, 2013) (citing cases rejecting fees as a motive for auditors to suppress a client's fraud). Plaintiffs provide no basis for the assertion that PwC's fees were "exorbitant and well above average". (Compl. ¶ 283.) Consequently, the allegations regarding PwC's motive and opportunity are insufficient to plead scienter.

Nor do Plaintiffs plead facts regarding PwC that would constitute "strong circumstantial evidence of conscious misbehavior or recklessness". *Iowa*, 919 F. Supp. 2d at 331 (quotation omitted). "With respect to auditor scienter in particular, the standard is demanding." *Id.* (quotation omitted). "For recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care. It must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (quotation omitted). The reason for the demanding standard is that it is generally implausible that an independent auditor, such as PwC, which depends on its reputation for honesty, would join in a fraud by one of its clients. *See DiLeo v. Ernst & Young LLP*, 901 F.2d 624, 629 (7th Cir. 1990).

The Complaint does not come close to meeting that high standard.  <u>First</u>, the allegations that PwC violated generally accepted auditing standards ("GAAS") do not establish scienter.  "The mere misapplication of accounting principles by an independent auditor does not establish scienter.  Rather, [a plaintiff] must prove that 'the accounting practices were so deficient that the audit amounted to no audit at all' or that the accountant's judgments were such that 'no reasonable accountant would have made the same decisions if confronted with the same facts.'"  *Zucker v. Sasaki*, 963 F. Supp. 301, 307 (S.D.N.Y. 1997) (quoting *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992)).  Plaintiffs recite the allegedly relevant GAAS provisions at length.  (*See* Compl. ¶¶ 284-308.)  Yet when applying those provisions to this case, Plaintiffs allege merely that "the tests [PwC] performed were ineffective".  (*Id.* ¶ 300; *see also id.* ¶ 307.)  For example, Plaintiffs allege that PwC, when testing Tower's loss reserves estimate, relied on data from Tower but <u>either</u> "failed to test that data <u>or</u> tested it and failed to detect that the data and related internal controls were deficient".  (*Id.* ¶ 277 (emphasis supplied); *see also id.* ¶¶ 300, 307 (containing similar "either/or" allegations).)  These allegations against PwC amount at most to assertions of negligence, well short of the "no audit at all" standard, *Zucker*, 963 F. Supp. at 307, and thus do not state a claim for securities fraud.

<u>Second</u>, the allegations against PwC of so-called "red flags" (Compl. ¶¶ 279-280) do not establish scienter.  "[T]he red flags giving rise to an inference of recklessness must be particularized, specific, and together, egregious."  *Iowa*, 919 F. Supp. 2d at 344.  Critically, to support a claim against an auditor, the alleged "red flags" must have been known to the auditor.  *Iowa*, 919 F. Supp. 2d at 344.  Although Plaintiffs refer to "CW statements" (Compl. ¶ 279), Plaintiffs do not allege that any of the confidential witnesses provided information about what PwC knew.  Paragraph 279 of the Complaint sets forth nine purported "red flags" that "PWC <u>would have learned</u> had it followed the applicable GAAS procedures . . . <u>or</u> which PWC knew and failed to incorporate into its audit testing and opinions".  (*Id.* (emphases supplied).)  This paragraph is an acknowledgment on the face of the Complaint that Plaintiffs have pleaded no facts demonstrating PwC's actual knowledge of these supposed "red flags".

Moreover, even if Plaintiffs were to allege that PwC was aware of these purported "red flags", "flags are not red merely because the plaintiff calls them red".  *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 254 (S.D.N.Y. 2012) (quoting *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 573 (S.D.N.Y. 2011), *aff'd*, 482 F. App'x 618 (2d Cir. 2012)).  Instead, a "red flag" is one that "would place a reasonable auditor on notice that that the audited company was engaged in wrongdoing to the detriment of its investors".  *In re Tremont Sec. L., State L. & Ins. Litig.*, 703 F. Supp. 2d 362, 370 (S.D.N.Y. 2010), *aff'd*, 487 F. App'x 636 (2d Cir. 2012).  The nine "red flags" listed in the Complaint as to PwC (*see* Compl. ¶¶ 279-280) do not meet this standard.  Five are artfully drafted variants of one another:  (1) that Tower had a "growth by acquisition strategy [that] resulted in the need to combine multiple businesses"; (2) that Tower had "disparate, inconsistent and unintegrated systems"; (3) that Tower "lack[ed] . . . systems to identify deficiencies in classifying premiums by line of business"; (4) that Tower had "'[o]ngoing problems' of misclassifying and reconciling premiums and losses"; and (5) that Tower used "multiple 'roll forwards' in determining loss reserves".  (Compl. ¶ 279.)  Fairly read, these five items all allege the same thing—that Tower relied on multiple, poorly integrated systems and that, as a result, it was more difficult to work with Tower's data and mistakes could occur.  Even if true, this would not, as a matter of law, have put a reasonable auditor on notice that Tower "was engaged in wrongdoing to the detriment

of its investors", *Tremont*, 703 F. Supp. 2d at 370, and certainly does not give rise to a "strong inference" of scienter.

Plaintiffs conspicuously fail to allege that PwC knew about three more supposed "red flags" (*see* Compl. ¶ 279)—(1) that the State of California uncovered "infractions" during a workers' compensation audit; (2) that an acquisition target called Global Indemnity walked away from a potential transaction; and (3) that Tower had a vaguely described "management culture" of keeping loss reserves low. Plaintiffs allege only that PwC could have learned of these "red flags" if it had conducted a GAAS audit. (*Id.*) Such allegations are insufficient. *See Stephenson*, 768 F. Supp. 2d at 575 (dismissing complaint where "red flags allege no more than that PWC had access to information by which it *could* have discovered warning signs of fraud or that PWC *would* have discovered these warning signs if it had conducted an audit in accordance with GAAS" (emphases in original)). And Plaintiffs' final "red flag" as to PwC fails because Tower's reserve review and strengthening in 2012 were positive signs that management was carefully revising its loss estimates—not warnings of fraud—and in any event were publicly disclosed and therefore cannot be a "red flag". *Saltz v. First Frontier L.P.*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. 2012).

Third, the allegations regarding the magnitude of Tower's errors in estimating its loss reserves (Compl. ¶ 270) do not establish scienter either. "[T]he magnitude of an alleged fraud fails to establish scienter." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, No. 13 Civ. 1094 (ER), 2014 WL 3605540, at *16 (S.D.N.Y. July 21, 2014); s*ee Dobina*, 909 F. Supp. 2d at 255-56 (complaint insufficient when "purported red flags amount not so much to any meaningful contemporaneous knowledge that [the auditor] had showing the existence of any misstatements, but rather that the size and nature of the fraud was such that [the auditor] should have found it"); *Special Situations Fund*, 2014 WL 3605540, at *21 ("Courts have repeatedly held that even fraud of Madoff proportions does not justify an inference of scienter in the absence of allegations of awareness of red flags."); *see also DiLeo*, 901 F.2d at 627 ("even a large column of big numbers need not add up to fraud").

Moreover, Tower's restatement relating to loss reserves was not "massive", as Plaintiffs allege (Compl. ¶ 193) in an effort to shore up their scienter allegations. The Complaint conveys the misleading impression that Tower's restatement exceeded $500 million. (*See, e.g.*, Compl. ¶ 5 ("Tower has been forced to restate and revise its financial statements for 2009 through the first quarter of 2013, reporting a total of $570 million in additional loss reserves . . . ."), ¶ 270 (referring to "the sweeping breadth of Tower's Restatement and financial revisions, including the disclosure that its loss reserves were understated **by over half a billion dollars**" (emphasis in original)).) The Court may consider Tower's SEC filings, on which the Complaint relies, to determine what the documents state. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). In those SEC filings, Tower restated its loss and loss adjustment expenses by a total of $37 million (not $570 million) over three years: $5.7 million in 2010, $21.7 million in 2011 and $9.6 million in 2012. (2012 Form 10-K/A, at F-11, *quoted in* Compl. ¶ 122.) The restatement increased Tower's loss and loss adjustment expenses, which as originally reported were around $3.093 billion over those three years (*see id.* at F-13), by around 1.2%. Contrary to Plaintiffs' suggestion that the restatement "wip[ed] out all of the income that the Company had reported cumulatively during the Class Period" (Compl. ¶ 193), the $37 million restatement was around 16% of the $233.4 million in cumulative net income previously reported for 2009 to 2012.

The bulk of the increases in loss reserves were not a restatement; they were increases to Tower's original estimates of its loss reserves, based on developments in the second to fourth quarters of 2013. Tower disclosed in its Forms 10-K that its loss reserves were estimates, at a given point in time, of the ultimate costs of claims incurred, and that Tower regularly revised those estimates as additional information became available. (*See, e.g.*, 2011 Form 10-K, at 10-11.) Accordingly, after-the-fact increases to loss reserves are not indicators of fraud. *See In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 545-46 (S.D.N.Y. 2009) (no scienter where insurer's estimate of loss reserves was off by 80%), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009); *cf. Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 495-98 (S.D.N.Y. 2013) (loan loss reserves).

**Actionable Misstatement.** In addition, Plaintiffs do not plead an actionable misstatement on the part of PwC because they fail to allege that PwC did not honestly believe its audit opinions at the time they were issued. Securities claims based on statements on matters of judgment and opinion must allege that the opinion was "both objectively false and disbelieved by the defendant at the time it was expressed". *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011); *see also City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 67-68 (2d Cir. 2012) (applying *Fait* to Section 10(b) claims). As with the loan loss reserves and goodwill at issue in *Fait*, the adequacy of an insurance company's loss reserves "is not a matter of objective fact" because loss reserves, by definition, are estimates of what will happen in the future and "will vary depending on a variety of predictable and unpredictable circumstances". *Fait*, 655 F.3d at 113; *see also Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*, 945 F.2d 1226, 1229-33 (2d Cir. 1991) (describing how "[j]udgments must inevitably be made" in setting insurance loss reserves). Indeed, Tower's SEC filings from 2010, 2011 and 2012 disclosed its loss reserves as estimates. (*See* above.)

PwC's statements were expressly phrased as opinions. (*See* Compl. ¶¶ 309-310.) Plaintiffs themselves characterize them as "PWC's audit opinions". (*Id.* ¶ 311.) "[W]here, as here, statements by an auditor are couched as opinions, . . . the bar is raised even higher to allege the requisite *scienter*. In particular, to allege that an opinion is false (and *a fortiori*, to allege that it is false with *scienter*), the complaint must set forth facts sufficient to warrant a finding that the auditor did not actually hold the opinion it expressed or that it knew that it had no reasonable basis for holding it." *Dobina*, 909 F. Supp. 2d at 255 (quotation omitted). Moreover, when an auditor reports on GAAS compliance, the report is "inherently one of opinion". *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 580 (S.D.N.Y. 2012) (quotation omitted). Accordingly, PwC's statements—that, "*in our* [PwC's] *opinion*", Tower's financial statements were fairly presented, in all material respects, in conformity with GAAP, and Tower "maintained, in all material respects, effective internal control over financial reporting", and that PwC conducted its audits in accordance with GAAS (Compl. ¶¶ 309-310)—cannot amount to actionable misstatements because the Complaint does not also allege that PwC did not honestly believe its audit opinions at the time they were issued.

The Complaint does not adequately allege facts establishing scienter or an actionable misstatement. Accordingly, we respectfully request that the Court schedule a pre-motion conference on a motion to dismiss the claim against PwC.

Respectfully,

Antony L. Ryan

Hon. Analisa Torres
   United States District Court
      Southern District of New York
         500 Pearl Street
            New York, NY 10007-1312

BY ECF AND E-MAIL

Copies to Counsel of Record

BY ECF