UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Master File No. 1:13-cv-5852-AT

IN RE TOWER GROUP INTERNATIONAL,
LTD. SECURITIES LITIGATION

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**MOTION FOR LEAVE TO AMEND PURSUANT TO FED. R. CIV. P. 15(a)**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

SUMMARY OF PROCEDURAL HISTORY ................................................................................2

ARGUMENT ..................................................................................................................................5

I. THE COURT SHOULD GRANT LEAD PLAINTIFFS' MOTION FOR LEAVE TO FILE THE SAC ..................................................................................................................5

II. THE PROPOSED SECOND AMENDED CONSOLIDATED COMPLAINT CURES THE DEFICIENCIES IDENTIFIED IN THE ORDER .................................................................8

III. CONCLUSION ..................................................................................................................12

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allgaier v. Peterson*,
   2015 WL 5459808 (S.D.N.Y. Aug 13, 2015) ..................................................................6

*In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*,
   2011 WL 4357166 (S.D.N.Y. Sep. 13, 2011) ............................................................6, 7, 8

*Cortec Indus. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ...............................................................................................6

*Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*,
   282 F.3d 83 (2d Cir. 2002) ...............................................................................................6

*Foman v. Davis*,
   371 U.S. 178 (1962) .........................................................................................................2

*Foster v. DeLuca*,
   545 F.3d 582 (7th Cir. 2008) ............................................................................................8

*Harris v. Amgen*,
   573 F.3d 728 (9th Cir. 2009) ............................................................................................6

*In re Lehman Bros. Sec. & ERISA Litig.*,
   09 MDL 2017, ECF No. 338 (Pretrial Order No. 17) (Sept. 8, 2010) ..........................6, 8

*Loreley Fin. No. 3 Ltd. v. Wells Fargo Secs., LLC*,
   797 F.3d 160 (2015) .................................................................................................2, 5, 7

*Ronzani v. Sanofi*,
   899 F.2d 195 (2d Cir. 1990) .............................................................................................5

*Telesco v. Neuman*,
   2015 WL 5474230 (S.D.N.Y. Sep. 8, 2015) ....................................................................5

*Williams v. Citigroup Inc.*,
   659 F.3d 208 (2d Cir. 2011) .............................................................................................2

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 15(a) ...........................................................................1, 2, 6, 8

Federal Rule of Civil Procedure 59(e) .........................................................................................8

Rule 58 ..........................................................................................................................................8

Lead Plaintiffs, the Kansas City, Missouri Employees' Retirement System, the Jacksonville Police and Fire Pension Fund, the Oklahoma Firefighters Pension & Retirement System, ADAR Enhanced Investment Fund, Ltd. and ADAR Investment Fund, Ltd. ("Lead Plaintiffs"), respectfully submit this memorandum of law in support of their Motion for Leave to Amend Pursuant to Federal Rule of Civil Procedure 15(a) (the "Motion"). Lead Plaintiffs hereby seek to amend the claims asserted in their Amended Consolidated Class Action Complaint (ECF No. 110) (the "Complaint") against Defendant PricewaterhouseCoopers LLP ("PwC"), in light of the Court's September 18, 2015 Memorandum and Order dismissing those claims (ECF No. 155) (the "Order").

**INTRODUCTION**

Lead Plaintiffs respectfully request that the Court grant them leave to file the accompanying Second Amended Consolidated Class Action Complaint ("SAC"), which adds new allegations concerning PwC's scienter that address the issues raised in the Order.[1] These new allegations specifically address PwC's explicit awareness of the very problems that caused Tower's[2] November 14, 2013 Restatement (the "Restatement"). Contrary to the audit reports PwC provided to Tower investors during the Class Period, the Restatement constitutes an explicit admission that Tower's financial statements did not comply with generally accepted accounting principles ("GAAP") and that Tower's internal controls were not "effective." The SAC adds new

---

[1] Plaintiffs' proposed SAC is Exhibit A to the accompanying Notice of Motion. All references to "¶_" are to the numbered paragraphs in the SAC. A highlighted version of the SAC, identifying certain of the newly added factual allegations, is attached as Exhibit 1 to the accompanying Declaration of James A. Harrod (the "Harrod Declaration"). Given the partial settlement with the Tower Defendants (defined below), the changes in the SAC include those necessary to conform the claims in the absence of the settling defendants.

[2] The term "Tower" herein refers to Tower Group International, Ltd. ("TGIL"), and its predecessor, Tower Group, Inc. ("TGI").

factual allegations creating a strong and compelling inference that PwC's false, misleading and incomplete statements were made with scienter. For example, PwC knew since 2010 – prior to completing its first audit of Tower's financial statements and internal controls – that Tower had "significant deficiencies" in its "quarterly and year-end loss reserving processes." These deficiencies were never corrected and ultimately were a substantial cause of the Restatement and Tower's downfall. The new allegations against PwC are based on a substantial volume of internal Tower documents that Lead Plaintiffs obtained access to manually review only after filing their motion seeking preliminary approval of the partial settlement with the Tower Defendants on July 21, 2015. ECF No. 146.

Leave to amend or replead a complaint is to be "freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Loreley Fin. No. 3 Ltd. v. Wells Fargo Secs., LLC,* 797 F.3d 160, 190 (2015) (vacating the district court's judgment and ordering the district court to grant plaintiffs leave to amend); *see also* Fed. R. Civ. P. 15(a). As the United States Court of Appeals for the Second Circuit has recently held, leave to amend should be granted in complex securities actions where the dismissal is based on a finding of inadequate allegations of scienter "on which reasonable minds can differ" because the "'permissive standard' of Rule 15 'is consistent with our strong preference for resolving disputes on the merits.'" *Loreley,* 797 F.3d at 190 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)).

Lead Plaintiffs respectfully submit that, taking into account the nature of the proposed amendment, request for leave to amend under Rule 15(a) should be granted.

## SUMMARY OF PROCEDURAL HISTORY

Following their appointment on June 17, 2014 (ECF NO. 73), Lead Plaintiffs filed a Consolidated Class Action Complaint on August 22, 2014 (ECF No. 81) (the "Initial Complaint"), alleging securities fraud claims against PwC, in addition to securities fraud and other claims

against the Tower Defendants (PwC and the Tower Defendants are collectively referred to as "Defendants").[3]

Pursuant to Rule III(B)(i) of this Court's Individual Practices in Civil Cases, the parties exchanged letters in September 2014 setting forth and responding to "pleading deficiencies" identified by Defendants. In those letters, PwC identified the grounds for its anticipated motion to dismiss, and Lead Plaintiffs addressed those arguments and affirmed the merits and strengths of the Initial Complaint's allegations. On October 3, 2014, PwC submitted a letter to the Court requesting a pre-motion conference pursuant to Rule III(A)(ii) of the Court's Individual Practices in Civil Cases, which reiterated the arguments made in its September 2014 letter exchange with Lead Plaintiffs. ECF No. 90. On October 14, 2014, Lead Plaintiffs filed a response, stating the reasons why the Initial Complaint had adequately alleged Defendants' scienter and the falsity of their statements. ECF No. 94. The following day, on October 15, 2014, the Court denied the request for a pre-motion conference and set a briefing schedule for Defendants' motions to dismiss.

On December 3, 2014, PwC and the Settling Defendants filed their motions to dismiss. ECF Nos. 99, 103. On December 23, 2014, Lead Plaintiffs amended the Initial Complaint to address issues raised in the Tower Defendants' motion to dismiss. The Complaint, however, made no material changes to the factual allegations concerning PwC's scienter. *See* Memorandum of Law In Support of Defendant PwC's Motion to Dismiss the Complaint (ECF No. 119), at 33 (stating that the December 23, 2014 Complaint did not include any new factual allegations as to PwC). PwC and the Settling Defendants then filed renewed motions to dismiss the Complaint on

---

[3] The Tower Defendants – Tower Group, Inc. and Tower Group International, Ltd., ACP Re, Ltd., Michael H. Lee, and William E. Hitselberger (referred to collectively herein as the "Settling Defendants" or "Tower Defendants") – reached an agreement with Lead Plaintiffs to settle the outstanding claims against them, which received final approval from this Court on November 23, 2015.

3

February 3, 2015 (ECF Nos. 118, 122), and the briefing of those motions was completed on April 17, 2015.

On July 21, 2015, Lead Plaintiffs formally moved for preliminary approval of the then-proposed settlement with the Tower Defendants. ECF No. 146. On August 13, 2015, the Court granted Lead Plaintiffs' motion for preliminary approval of their partial settlement. ECF No. 152. On November 23, 2015 the Court granted final approval of the settlement between Lead Plaintiffs and the Tower Defendants. ECF No. 179.

Notwithstanding the settlement process and the pendency of the motions to dismiss, Lead Plaintiffs continued their investigation into the wrongdoing alleged in the Complaint, with a focus on strengthening the allegations against the remaining Defendant, PwC. As of the beginning of September, Lead Plaintiffs had completed a manual review of tens of thousands of internal Tower documents concerning PwC's audits of Tower. This information was not available to Lead Plaintiffs until after they moved the Court for preliminary approval of the then-proposed settlement with the Tower Defendants on July 21, 2015. That review was conducted promptly and expeditiously, but its pace was limited by the need to manually review the documents without the ability to search, sort or otherwise employ electronic tools now typically available in reviewing a large volume of material. Upon completion of that review process, Lead Plaintiffs were evaluating the newly-obtained factual information that bolstered its allegations against PwC. At the same time that Lead Plaintiffs were in the process of preparing the SAC to incorporate the newly-acquired information concerning the claims against PwC, the Court entered its September 18, 2015 Order granting PwC's motion to dismiss on the grounds that the Complaint failed to adequately plead PwC's scienter. ECF No. 155.

Pursuant to this Court's Individual Rule of Practice III.A, on October 7, 2015, Lead Plaintiffs submitted a letter requesting a pre-motion conference in connection with Lead Plaintiffs' motion for leave to amend the Complaint. ECF No. 158. On October 19, 2015, PwC submitted a letter in opposition to that request (ECF No. 165), and on October 23, 2015, Lead Plaintiffs submitted a letter in reply (ECF No. 166). On November 18, 2015, this Court terminated the request for a pre-motion conference and ordered a briefing schedule for Lead Plaintiffs' Motion. ECF No. 176. This memorandum accompanies Lead Plaintiffs' Motion and the proposed SAC, as directed by the Court's November 18, 2015 Order.

## ARGUMENT

### I. THE COURT SHOULD GRANT LEAD PLAINTIFFS' MOTION FOR LEAVE TO FILE THE SAC

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Ronzani v. Sanofi*, 899 F.2d 195 (2d Cir. 1990) (internal quotation omitted). The Second Circuit recently explained that plaintiffs should be allowed to amend any curable defects identified by the Court in an opinion granting defendants' motion to dismiss because "in the 'absence of a definitive ruling,' plaintiff was not 'in a position to weigh the practicality and possible means of curing'" the specific deficiencies identified by defendants prior to the court's ruling. *See Telesco v. Neuman*, 2015 WL 5474230, at *3 (S.D.N.Y. Sep. 8, 2015) (quoting *Loreley*, 797 F.3d at 190 (ruling "that the district court exceeded the bounds of its discretion by denying Plaintiffs leave to amend their complaint" on the grounds that plaintiffs failed to amend following the parties' pre-motion exchange of arguments)). Accordingly, parties should be allowed to amend their pleadings absent a demonstration of "undue delay, bad faith, dilatory motive, or futility." *Loreley*, 797 F.3d at 190. Moreover, "the burden of showing futility, bad faith, or undue prejudice

5

is on the non-moving party." *Allgaier v. Peterson*, 2015 WL 5459808, at *4 (S.D.N.Y. Aug 13, 2015).

Given the strong preference for allowing amendment of a complaint under Rule 15(a), an amendment should be permitted unless it is legally impossible for the plaintiff to cure the deficiencies in the pleading. *See In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*, 2011 WL 4357166, at *3 (S.D.N.Y. Sep. 13, 2011) (granting leave to amend following dismissal particularly appropriate where "denial of Plaintiffs' motion will preclude them from correcting the flaws in their first consolidated complaint"); *Harris v. Amgen*, 573 F.3d 728, 736-37 (9th Cir. 2009) (reversing district court and holding that dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by amendment). Because Lead Plaintiffs can and do allege facts in support of their claims consistent with correcting the issues identified in the Order, Lead Plaintiffs should be permitted leave to amend to address the Court's concerns. *See, e.g.*, *Bear Stearns*, 2011 WL 4357166, at *3; *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 91-92 (2d Cir. 2002) (reversing the district court's denial of plaintiff's motion for leave to amend the complaint); *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) (reversing, in part, denial of leave to replead); *In re Lehman Bros. Sec. & ERISA Litig.*, 09 MDL 2017, ECF No. 338 (Pretrial Order No. 17) (Sept. 8, 2010) (Harrod Decl. Ex. 2) (granting plaintiffs' motion to amend judgment and for leave to amend consolidated amended complaint, finding that defendants' objections were more appropriately considered on a motion to dismiss).

As discussed further below, the proposed amendment is not futile because it provides highly relevant additional factual support for Lead Plaintiffs' claims. The SAC adds significant detail reflecting PwC's knowledge of Tower's deficient internal controls and loss reserving

6

practices throughout the entire Class Period. For example, as discussed below, the new scienter allegations in the SAC specifically address the Court's finding that the Complaint failed to adequately establish PwC's "actual[] aware[ness]" of "red flags" concerning "Tower's 'growth by acquisition' strategy, which allegedly left the Company with a dysfunctional patchwork of data systems that thwarted its ability to ensure that loss reserve estimates adequately accounted for business line variations." *See* Order at 11-14. Where a "case combines a complex commercial reality with a long, multi-prong complaint," "pleading defects may not only be latent, and easily missed or misperceived without full briefing and judicial resolution; they may also be borderline, and hence subject to reasonable dispute." *Loreley*, 797 F.3d at 191. This is particularly true where the dismissal is "based on the district court's determination that Lead Plaintiffs' fraud allegations raised neither plausible inferences of material misrepresentations nor strong inferences of scienter" because that "determination[] entail[s] judgment calls on which reasonable minds can differ in a not insignificant number of cases." *Id.*

Nor will PwC be able to meet the heavy burden of showing that the proposed amendment is the result of "undue delay, bad faith, [or] dilatory motive." *Loreley*, 797 F.3d at 190. In particular, Courts have specifically found that justice requires leave to amend be granted when there has been a "revelation of new evidence." *See Bear Stearns*, 2011 WL 4357166, at *3. As stated above, Lead Plaintiffs obtained detailed new information, beginning after July 21, 2015, based on their manual review of tens of thousands of internal Tower documents that significantly strengthened their claims against PwC. This information was not, and could not have been, obtained earlier. Lead Plaintiffs were in the process of synthesizing this new evidence and preparing the proposed SAC when the Order was issued. Shortly after the Order was issued, Lead Plaintiffs sought to file the Motion. As such, there is no undue delay, dilatory or improper motive.

7

Leave to amend should be granted here because (1) the SAC represents Lead Plaintiffs' first real attempt at amendment of the allegations concerning PwC; (2) significant and meaningful evidence not previously available has been obtained by Lead Plaintiffs; (3) there is no bad faith on the part of Lead Plaintiffs; and (4) there is no undue prejudice to PwC.[4]

## II. THE PROPOSED SECOND AMENDED CONSOLIDATED COMPLAINT CURES THE DEFICIENCIES IDENTIFIED IN THE ORDER

The proposed SAC cures deficiencies that the Court identified in the Order by alleging newly-discovered facts, all of which come from documents that first became available to Lead Plaintiffs after July 2015. *See* Harrod Decl. Ex. 1 (highlighted version of the SAC, identifying new allegations). The SAC addresses the Court's concerns regarding the pleading of PwC's "conscious misbehavior or recklessness" by specifically alleging facts demonstrating that PwC ***did*** know of and "identify … during its audits" the underlying internal control deficiencies at Tower as well as "red flags" further suggesting and evidencing such deficiencies and the existence of accounting misstatements. *See* Order at 11-13.

The SAC sets forth in detail PwC's knowledge and deliberate disregard of: (i) material weaknesses in Tower's internal controls over its loss reserve process, (ii) red flags reflecting that

---

[4] Because the Order did not specifically preclude amendment, and no final judgment under Rule 58 has been entered as to the claims against PwC, Lead Plaintiffs seek relief pursuant to Rule 15(a). To the extent that a final judgment is entered during the pendency of this Motion indicating that the dismissal of the claims against PwC is with prejudice, Lead Plaintiffs reserve their right to seek relief pursuant to Federal Rule of Civil Procedure 59(e) to amend any such judgment to provide for "dismissal without prejudice" so that this motion pursuant to Rule 15(a) may proceed. If necessary, a motion to alter the Court's dismissal to a "dismissal without prejudice" should be granted here. *See Bear Stearns*, 2011 WL 4357166, at *3 (granting plaintiffs' request under Rule 59(e) for entry of a dismissal without prejudice and permitting leave to amend complaint based on new evidence); *Lehman Brothers*, (Harrod Decl. Ex. 2) (granting plaintiffs' motion to alter or amend judgment and for leave to amend first consolidated amended complaint); *see also Foster v. DeLuca*, 545 F.3d 582 (7th Cir. 2008) (holding that district court abused discretion by denying appellant's motion pursuant to Rule 59(e) for relief from a judgment to permit the filing of an amended complaint).

8

Tower's financial statements failed to comply with GAAP and (iii) red flags demonstrating that PwC's audits failed to comply with generally accepted auditing standards ("GAAS").

The proposed SAC alleges that the underlying causes of the Restatement and Tower's belated reserve increases, improper reconciliation of premiums, internal control deficiencies, and manipulated loss reserve process were all well-known to PwC no later than August 2010.  ¶¶10, 12, 21, 87, 90-100.  In fact, Tower's prior auditor, Johnson Lambert & Co LLP ("Johnson Lambert"), found "significant deficiencies" in Tower's "Financial Reporting" and "Program accounting (reconciliations of Program related receivables payables and other assets)" of its loss reserves and these findings were conveyed to PwC at the commencement of PwC's engagement as Tower's auditor.  ¶92.

In addition, in December of 2010, Tower engaged Ernst & Young ("E&Y") to evaluate Tower's process of determining and reporting loss reserves.  The January 2011 report that resulted from the review (hereinafter the "E&Y Report"), which PwC itself had and utilized for its own audits of Tower, identified five weaknesses within Tower's reserving process that related to: 1) "data management," 2) "reserve setting," 3) "reporting to management," 4) "reporting to the audit committee," and 5) "comparison to third party indications and management's prior indications." ¶94.

Regarding Tower's data management, the E&Y report found, *inter alia*, that "[a]s a result of the numerous systems that provide the data for paid claims and loss reserves, the actuarial and accounting department spend significant time aggregating and validating data at period close.  The time spent on data validation significantly decreases the time available for actuarial analysis." ¶95. Concerning Tower's reserve setting, the E&Y Report found that "[m]anagement's reserving policies and actuarial guidelines are not documented in a way that demonstrates that the period to

9

period reserve projections [are] systematic and consistent." ¶95.  And, in regard to Tower's reporting to the audit committee, the E&Y Report found, *inter alia*, that "[a]ctuarial management does not have a clear, simple and consistent internal reporting package by line of business to communicate reserves.  The presentation that management has provided to the AC the past several quarters has varied in level of detail and content.  The presentation of loss reserves to the Audit Committee, on occasion, has not reconciled to the financial statement.  Additionally, the Audit Committee reporting package has not included explanation for significant fluctuations on a consistent basis. The current presentation does not provide an explanation for what happened to the reserve estimate over the prior period(s)." *Id*.

As alleged in the proposed SAC, the E&Y Report identified an uncontrolled and easily manipulated loss reserve process at Tower, with rampant disorganization and inconsistency.  Each of these early findings by E&Y previewed the ultimate disclosure of the fraud and demonstrate that PwC's Class Period audit reports were materially false, misleading, omitted material facts, and, most importantly here, made with scienter.

The proposed SAC further alleges that PwC confirmed and utilized the findings of both Johnson Lambert and the E&Y Report, and specifically identified these and other failures concerning Tower's inadequate reserving process and internal control issues as "significant deficiencies," first using that designation when PwC began its engagement as Tower's auditor in 2010. ¶¶91-101.  PwC continued to identify and designate these issues, as well as additional issues with Tower's loss reserving process and internal controls, as "significant deficiencies" each year prior to the Restatement.  ¶¶103-04, 106-07, 109-11, 113-22.  Each year, PwC formally communicated these deficiencies to Tower and to Tower's Audit Committee, but they were never

remediated and PwC continued to sign off on Tower's financial reporting without disclosing to investors these significant and known risks. *E.g.* ¶¶101, 116, 122.

The proposed SAC also alleges that PwC knew of the specific problems that Tower had in its internal controls over properly correlating premiums and loss reserves by line of business, which was critical to properly setting loss reserves. ¶¶106-12. Indeed, the Restatement was attributed in part to Tower's lack of internal controls over "premium receivable account reconciliation." ¶122. PwC recognized the importance of these controls, and Tower's weaknesses, as early as March 2011 when in a letter to Tower's management, PwC noted that Tower lacked clear and consistent internal reporting by line of business to communicate reserves. ¶¶103-04.

The proposed SAC also alleges that PwC knew that Tower's data integration was woefully inadequate from at least 2011. In March 2011, for example, PwC reported to Tower's Audit Committee that, as a result of Tower's multiple acquisitions, Tower's financial reporting controls "struggled to keep up" with processing financial information. ¶103. The exact same concern was reiterated by PwC in April 2012, and again in 2013, that Tower's use of numerous spreadsheets in the actuarial process was highly untenable. *E.g.* ¶¶109-10.

Finally, despite being in a position to put an end to Tower's loss reserve scheme, PwC utterly failed to do so. For instance, while PwC could have withheld its certification of Tower's financial statements in its audit reports, the SAC details that PwC, in violation of its obligations under GAAS, repeatedly bent to pressure from Tower management and rubberstamped the Company's financial statements. ¶¶124-25.

All of these additional factual allegations address what the Court identified as deficiencies in the Complaint. Where the newly discovered material included in the SAC adds significant factual detail addressing PwC's knowledge of both the underlying, undisclosed and misrepresented

problems at Tower, and the existence of "red flags" further evidencing such problems, leave to amend is entirely appropriate.

## III. CONCLUSION

For the foregoing reasons, Lead Plaintiffs' motion for leave to amend should be granted in its entirety.

DATED: December 7, 2015                     Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER &
    GROSSMANN LLP**

   /s/ James A. Harrod
James A. Harrod
Lauren A. Ormsbee
Katherine A. Stefanou
Jake Nachmani
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Jim.Harrod@blbglaw.com
Laurenm@blbglaw.com
Katherine.Stefanou@blbglaw.com
Jake.Nachmani@blbglaw.com

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White III
Lester R. Hooker
5200 Town Center Circle
Suite 601
Boca Raton, FL 33486
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*Co-Lead Counsel for Co-Lead Plaintiffs the Public Pension Funds and the Class*

12

**BERNSTEIN LIEBHARD LLP**
U. Seth Ottensoser
Joseph R. Seidman, Jr.
Laurence J. Hasson
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
ottensoser@bernlieb.com
seidman@bernlieb.com
lhasson@bernlieb.com

*Co-Lead Counsel for Co-Lead Plaintiff ADAR and the Class*